KOH
CM/JCC: USAO 2020R00591

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** 23-cr-00006-TDC |
| | * | |
| **OLUSEGUN SAMSON ADEJORIN,** | * | **(Wire Fraud, 18 U.S.C. § 1343; Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1); Unauthorized Access to Protected Computer to Obtain Information, 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(i); Aiding and Abetting, 18 U.S.C. § 2; Use of a Falsely Registered Domain Name, 18 U.S.C. § 3559(g)(1); Forfeiture, 18 U.S.C. §§ 981(a)(1)(c), 982(a)(2)(B) and (b)(1), 1030(i), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))** |
| **Defendant** | * | |
| | ******* | |

USDC- GREENBELT
23 JAN 11 PM1:20

**INDICTMENT**

**COUNTS ONE THROUGH FIVE**
**(Wire Fraud)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to this Indictment:

1. Defendant **OLUSEGUN SAMSON ADEJORIN** ("**ADEJORIN**") was a citizen of Nigeria.

2. Victim 1 was a charitable organization located in North Bethesda, Maryland.

3. Victim 1 provided investment services to other charitable organizations, including Victim 2, in which it invested funds on behalf of the other charitable organizations.

4. Employee 1 and Employee 2 were employees of Victim 1.

5. Victim 2 was a charitable organization located in New York, New York. Victim 2 had funds invested through Victim 1.

6. Victim 2 could request a withdrawal of invested funds from Victim 1. For withdrawal requests over $10,000, approval was required from at least one of several individuals authorized by Victim 1 to provide such approval. After this approval was obtained, the finance staff at Victim 1 would effectuate the withdrawal by initiating a wire transfer through Victim 1's bank.

7. Employee A and Employee B were employees of Victim 2.

8. **ADEJORIN** was not employed by Victim 1 or Victim 2 (collectively, "the Victims") and had no right of access to send or receive any email from any employee account at the Victims.

**The Techniques**

9. "Credential harvesting" tools enabled a perpetrator to steal victims' login credentials, such as login credentials to their company email account. One way credential harvesting could be accomplished was through sending phishing emails.

10. "Phishing" emails were designed to induce the recipients to turn over sensitive data, such as usernames and passwords. Phishing emails commonly were designed to appear as if originated from a legitimate source, such as a well-known business, and directed the recipient to enter personal information such as usernames and passwords, which information was then captured by the perpetrator.

11. "Domain spoofing" was a technique in which the internet domain name of a known entity was impersonated. Typically, the domain name appeared to be legitimate at first glance, but a closer look revealed that the spoofed domain name contained an additional letter or

number. The spoofed domain could be used to create spoofed email addresses. Use of a spoofed email address could make it appear to an email recipient that they were interacting with an employee of the legitimate entity, when in actuality the spoofed email address was controlled by the perpetrator.

**The Scheme to Defraud**

12. Between in or about June 2020 and continuing until in or about August 2020, **ADEJORIN** devised and intended to devise a scheme and artifice to defraud the Victims, and to obtain money and property from the Victims by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and with knowledge of the scheme's fraudulent nature ("the scheme to defraud").

**Manner and Means of the Scheme to Defraud**

It was part of the scheme to defraud that:

13. **ADEJORIN** controlled numerous email addresses, many of which were registered under other names, including "countryman004@gmail.com", "marystrait404@mail.com", and "eosprivate101@gmail.com".

14. **ADEJORIN** purchased a credential harvesting tool designed to steal email login credentials, including through the use of phishing emails.

15. Starting in or about early June 2020, and continuing until in or about August 2020, **ADEJORIN** gained unauthorized access to Employee 1's email account at Victim 1. **ADEJORIN** then sent and caused to be sent emails from Employee 1's email account at Victim 1 impersonating Employee 1, including emails regarding Victim 2's purported withdrawal requests.

16. **ADEJORIN** gained unauthorized access to Employee A's email account at Victim 2. **ADEJORIN** then sent and caused to be sent emails from Employee A's email account at Victim 2 impersonating Employee A, including emails requesting from Victim 1 a withdrawal of Victim 2's funds and inquiring of Employee 2 and others at Victim 1 about the status of a requested withdrawal.

17. **ADEJORIN** concealed and caused to be concealed the fraudulent emails from Employee 1, including by causing the fraudulent emails to be moved to an inconspicuous location within Employee 1's mailbox.

18. **ADEJORIN** registered and caused to be registered spoofed domains that were a misspelling of the domain names used by Victim 1 and Victim 2. The spoofed domain names each were registered using a false name and address. The spoofed domain names added the letter "r" to the actual domain names of Victim 1 and Victim 2. **ADEJORIN** employed and caused to be employed a spoofed email address of Employee B of Victim 2 in communications with Victim 1.

19. **ADEJORIN** used and caused to be used a web hosting service to access the internet as well as to submit to Victim 1 a withdrawal request for Victim 2's funds to be sent to a beneficiary bank account located in Hong Kong.

20. **ADEJORIN** induced, caused to be induced, and attempted to induce, Victim 1 and its employees and authorizing officials to approve wire transfers of Victim 2's funds to specified bank accounts located in Hong Kong pursuant to withdrawal requests that were not in fact submitted by Victim 2.

21. Through the use of fraudulent withdrawal requests and emails, **ADEJORIN** caused, and attempted to cause, Victim 1 to send Victim 2's funds to specified bank accounts located in Hong Kong that were not in fact Victim 2's bank accounts.

22. **ADEJORIN** caused more than $7.5 million of Victim 2's funds to be sent, pursuant to fraudulent withdrawal requests, through wire transfers from Victim 1 to bank accounts outside of the United States that were not in fact Victim 2's bank accounts.

**The Charges**

23. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

for the purpose of executing and attempting to execute the scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals and sounds, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| **1** | June 8, 2020 | Interstate wire transmission, from a location outside of Maryland to Maryland, caused by email purporting to be Employee 1 at Victim 1 confirming wiring instructions from Victim 2 |
| **2** | June 30, 2020 | Interstate wire transmission, from a location outside of Maryland to Maryland, caused by email purporting to be Employee A at Victim 2 inquiring on the status of a wire transfer for a requested withdrawal |
| **3** | July 7, 2020 | Interstate wire transmission, from a location outside of Maryland to Maryland, caused by email purporting to be Employee A at Victim 2 requesting from Victim 1 a withdrawal of Victim 2's funds |
| **4** | July 17, 2020 | Interstate wire transmission, from a location outside of Maryland to Maryland, caused by email from Employee 2 at Victim 1 facilitating approval for a wire transfer of |

| | | |
|---|---|---|
| | | Victim 2's funds pursuant to a purported withdrawal request from Victim 2 |
| **5** | August 14, 2020 | Interstate wire transmission, from a location outside of Maryland to Maryland, caused by email purporting to be Employee A at Victim 2 requesting from Victim 1 a withdrawal of Victim 2's funds |

24. In furtherance of the scheme, and as set forth in paragraph 11 and 18, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

knowingly falsely registered a domain name and knowingly used that domain name in the course of committing an offense, namely, registered a spoofed domain name of Victim 2 with a false name and address, and used that domain name in the course of committing the felony offenses charged in Counts Two and Three.

18 U.S.C. § 1343
18 U.S.C. § 3559(g)(1)
18 U.S.C. § 2

**COUNT SIX**
**(Aggravated Identity Theft)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 11 and 13 through 22 of Counts One through Five of this Indictment are incorporated here.

2. On or about June 8, 2020, in the District of Maryland and elsewhere, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—that is, a violation of 18 U.S.C. § 1343 as charged in Count One of this Indictment and incorporated here—knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, that is, the name and email address of Employee 1.

18 U.S.C. § 1028A(a)(1)

**COUNT SEVEN**
**(Aggravated Identity Theft)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 11 and 13 through 22 of Counts One through Five of this Indictment are incorporated here.

2. From at least on or about June 30, 2020, through on or about August 14, 2020, in the District of Maryland and elsewhere, the defendant,

**OLUSEGUN SAMSON ADEJORIN**,

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—that is, a violation of 18 U.S.C. § 1343 as charged in Count Two, Count Three, and Count Five of this Indictment and incorporated here—knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, that is, the name and email address of Employee A.

18 U.S.C. § 1028A(a)(1)

## COUNT EIGHT
## (Unauthorized Access to Protected Computer to Obtain Information)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 11 and 13 through 22 of Counts One through Five of this Indictment are incorporated here.

2. From on or about June 8, 2020, and continuing through on or about August 24, 2020, in the District of Maryland and elsewhere, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

intentionally accessed a computer, without authorization and exceeding authorized access, and thereby obtained information from a protected computer—that is, Employee 1's emails and email account at Victim 1, as hosted and stored on a server of Microsoft—and committed the offense for purposes of commercial advantage and private financial gain.

18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(i)

**FORFEITURE ALLEGATIONS**

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), 1030(i), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction of any of the offenses alleged in Counts One through Five and Count Eight of this Indictment.

**Wire Fraud Forfeiture**

2. Upon conviction of any of the offenses alleged in Counts One through Five, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

**Computer Intrusion Forfeiture**

3. Upon conviction of the offense alleged in Count Eight, the defendant,

**OLUSEGUN SAMSON ADEJORIN,**

shall forfeit to the United States: (a) any property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of such offense, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1030(i); and (b) any and all personal property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, such violations, pursuant to 18 U.S.C. § 1030(i).

**Substitute Assets**

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)(B) and (b)(1)
18 U.S.C. § 1030(i)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Erek L Barron /cM
Erek L. Barron
United States Attorney

SIGNATURE REDACTED
Foreperson

Date: January 11, 2023