IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal No. TDC-23-006 |
| | * | |
| OLUSEGUN SAMSON ADEJORIN, | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

**GOVERNMENT'S MOTION FOR *IN LIMINE*
RULING TO EXCLUDE DEFENSE EXHIBITS
AND DISCLOSURE OF ALIBI DEFENSE**

In advance of the December 8, 2025, trial against the Defendant, Olusegun Adejorin, the United States respectfully seeks an *in limine* ruling from the Court to preclude the Defendant from using certain exhibits, attached to this motion as Exhibits 1-13, and an order that the Defendant provide notice of an intended alibi defense as required by Federal Rule of Criminal Procedure 12.1 with sufficient time for meaningful review before trial.

## I.    BACKGROUND

This case stems from allegations that, between June 2020 and August 2020, the defendant used stolen login credentials and deliberately misleading email addresses to impersonate individuals at the Jewish Federation of Greater Washington and ORTAmerica to steal money that ORTAmerica had invested with the Federation of approximately $7.5 million.

On November 25, 2025, counsel for the Defendant provided the government 23 photographs and two videos for use as exhibits at trial. The majority of these exhibits appeared to be screenshots from an unknown cellular device. The content of these records leads the government to believe that the Defendant intends to both (1) claim as an alibi defense that the Defendant was in Nigeria when certain actions related to the intrusion of a United States

1

organization may have been initiated; and (2) introduce exhibits purporting to show that an individual named Benjamin Ojo was the actual perpetrator of the cyber intrusions because he was located in certain relevant locations to the intrusion at certain times.

## II.    ARGUMENT

### a.  Exclusion of Exhibits

Various of the 25 photographs/videos provided are of the Defendant and contain no written information.  The Government does not argue for their exclusion at this stage because they *might*, for example, be authenticated by the Defendant himself.  However, exhibits 1-13 should be excluded from evidence.

#### i.  *Photographs with date/location stamps*

Six of the Defendant's exhibits purport to be screenshots from the Snapchat social media application that contain both an image and a superimposed date and geographic location.  The defense bears the burden of producing evidence "sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a). This is a threshold requirement, and it is not satisfied simply because a screenshot exists. The proponent must at least offer evidence that the screenshot accurately reflects the content and metadata it is claimed to show and that it is attributable to the asserted user or device.

The screenshots suffer from multiple authentication issues.  They are not native Snapchat files or images extracted from a device.  Metadata from the photographs shows they were "created" on May 13, 2025, or November 25, 2025, which presents additional unanswered question as to the source of the photographs since the Defendant was in custody on those days.[1]  The screenshots do

---

[1] This does not necessarily mean the screenshots were taken on May 13, 2025 or November 25, 2025, because of different ways that metadata can be generated, but the metadata does little to answer the Government's questions as to the source of the photographs.

not show any user handle or device from which they were captured.

Even if the Defendant presents a witness who can lay foundation for the photographs themselves, such testimony will not authenticate the superimposed date and location labels. Those labels are presented as precise technical data (e.g., that they were captured in a specific city on a specific day) and are critical to the defense's alibi theory. The Defense will not be able to, even prima facie, establish that (1) the labels were automatically generated by Snapchat or by a phone's GPS and clock, (2) the underlying device settings were accurate at the relevant time, or (3) the labels could not have been added or altered by another application or through simple image-editing tools after the fact.[2,3] Without such evidence, Rule 901 is not satisfied as to the time-and-location content of these screenshots.

To the extent the defense offers the superimposed date and location information to prove that the Defendant or anybody else was in a particular place at a particular time, the labels constitute out-of-court assertions about time and location offered for their truth. If the labels were entered or selected by a user, they are hearsay under Rule 801(c) and inadmissible under Rule 802. Alternatively, if the Defendant seeks to admit the time-and-location labels as machine-generated data, it does not solve the Rule 901 problems above. Rule 901 still requires a foundation showing that the process or system "produces an accurate result." Fed. R. Evid. 901(b)(9). The Defendant would have to establish that these time-and-location labels are, in fact, automatically generated Snapchat overlays, establish how Snapchat creates these overlays, and establish which device they were taken from and how the device's clock and GPS were configured. Without that foundation,

---

[2] This Defendant in particular, accused of a sophisticated cyber intrusion, would easily be able to alter or fabricate the data contained in these photographs once the usefulness of an alibi became apparent.

[3] The Government notes that Snapchat messages typically are not saved—a well-known feature of the application, raising yet more questions as to the authenticity of these photographs. A user would have presumably had to "pull up" the time/location data from the application or wherever this data came from and take a screenshot *at that time* before the photograph were deleted—having no obvious reason to do so because the need for an alibi had not yet arisen by the Defendant's arrest.

the Court cannot permit the jury to treat these easily manipulated overlays as reliable proof of time and place.

Even if the Court were to find some minimal showing of authenticity, the screenshots should still be excluded under Rule 403 and the Best Evidence Rule. The Defendant seeks to use them to prove the **contents** of a digital photograph—specifically, the precise time and location information embedded in the images. Under Rule 1002, when a party seeks to prove the contents of a writing, recording, or photograph, the original is generally required, and Rule 1003 permits the use of duplicates only where there is no genuine question about the original's authenticity and where it would not be unfair to admit the duplicate in lieu of the original.

Here, the defense has not produced any original or native Snapchat files, nor any forensic image of a device that could be treated as an "original" under Rule 1001(d). Instead, the Defendant seeks to introduce into evidence partial screenshots whose metadata suggest *may* have been created while the defendant was incarcerated. The screenshots omit any surrounding context, associated messages, or technical details. Additionally, the fact that these images contain metadata reflecting that the screenshots themselves were created while the Defendant was incarcerated strongly suggests that the screenshots are derivative copies of earlier native digital files, and not the original recordings of the photographs at issue. Given the serious and unresolved questions about how these screenshots were generated and whether they accurately reflect any underlying original data, admitting them as "duplicates" would be unfair within the meaning of Rule 1003.

Finally, under Rule 403, whatever probative value these screenshots might have is substantially outweighed by the danger of misleading the jury and confusing the issues. The superimposed time-and-location suggest a technical precision that the Defendant cannot substantiate. Allowing the jury to see seemingly precise digital timestamps without a reliable

foundation would invite them to credit speculative alibi evidence and to engage in a collateral mini-trial about Snapchat's internal workings and the ease of manipulating screenshots.

### ii. *Video with time stamp*

One exhibit is a short video clip (a screenshot of which is attached as Exhibit 13 to this motion) that contains a date/time stamp superimposed over the video. All the arguments presented above related to the Snapchat screenshots apply here. This exhibit should be excluded or, if the underlying video can be authenticated through witness testimony, the date/time stamp redacted as unauthenticated and as hearsay.

### iii. *Photographs related to Benjamin Ojo*

Three additional photographs provided by the Defendant include information related to an individual named Benjamin Ojo. See Exhibits 7, 8, 9. The Government believes that the defense seeks to introduce these photographs to help show that Adewunmi "Benjamin" Ojo is a close associate of the Defendant and actually perpetrated the cyber intrusions. These photographs are similarly problematic in that they cannot be adequately authenticated at trial. For example, Exhibit 7 contains detailed biographical information of an individual above a photograph of Benjamin Ojo. However, the photograph contains no indication of where it was taken from or who entered the data below the photograph. Exhibit 8 is a screen capture of what appears to be a fingerprint card for an individual named Benjamin Ojo, but is not a complete screen capture and contains no indication of where the photograph came from apart from an incomplete URL visible in an address bar.

As with the Snapchat images, the defense has provided no evidence that any of these screenshots are what they purport to be. There is no testimony or certification from the creator or custodian of the records, no indication of which website or database was accessed, and no evidence

that the screenshots depict unaltered content rather than material selectively cropped, edited, or compiled by the defendant. Without such a foundation, these exhibits fail Rule 901.

In addition, the textual information in these screenshots consists of out-of-court assertions made by unknown declarants—for example, assertions about Ojo's name, identifiers, or immigration history. The defense appears to offer these statements for their truth, namely to show that the individual pictured is Ojo, that he matches certain descriptors, and that he has a particular immigration record.  Those statements are hearsay under Rules 801(c) and 802.

Finally, these exhibits raise the same concerns under Rules 403 and 1002–1003 discussed above.  There is a substantial risk that a jury will view partial, unauthenticated screenshots as authoritative government records simply because they look "official." In light of the lack of foundation and the availability of proper channels to obtain admissible records if necessary, the Court should exclude Exhibits 7–9.

iv.  *Screen captures of web pages*

The remaining challenged exhibits are screenshots that appear to depict pages from Gov.UK, from a website "b2bhint.com", and from a website whose URL includes the term "multiplatform.net." Once again, the defense has provided no information about who captured these screenshots, on what date, from what device, or whether the content they depict fairly and completely represents the underlying webpages. The screenshots are cropped, partial images that omit the full URL, page title, date of access, and other contextual information that would allow the Court to determine what they are and where they came from.

To authenticate a screenshot of online content, the proponent must provide at least some direct or circumstantial evidence that the screenshot accurately reflects the content on the referenced site at the time it is claimed to have been accessed, and that the content is attributable

to the source claimed.  The defense has offered neither. There is no testimony from a witness who captured the screenshots, no accompanying declaration under Rules 902(11), (13), or (14), and no evidence from the website operators. These exhibits therefore fail Rule 901.

Moreover, to the extent the defense seeks to use these screenshots to prove the truth of the statements on the webpages—for example, to establish particular factual assertions made by a foreign government or private entity—those statements are hearsay by out-of-court declarants, and no exception has been identified. The defense may not substitute unauthenticated, partial screenshots of unknown origin for properly obtained and authenticated records or testimony.

As with the Snapchat images, the use of partial, unauthenticated screenshots also triggers both Rule 403 and the Best Evidence Rule. The Defendant is relying on cropped screenshots from an unknown device and unknown user. Under these circumstances, the probative value of the screenshots is slight, and the danger that the jury will be misled by incomplete or manipulated depictions of online content substantially outweighs any probative value. The Court should therefore exclude Exhibits 10–12.

### b.  Order requiring notice of alibi defense

These defense exhibits strongly indicate that the defendant intends to assert an alibi defense—that he was in Nigeria at certain times relevant to the charged conduct—and to suggest that Adewunmi "Benjamin" Ojo committed the intrusions. The Snapchat screenshots in particular appear designed to show the defendant's purported location at specific times.

Federal Rule of Criminal Procedure 12.1 requires a defendant who "intends to offer a defense of alibi" to give written notice stating "the specific place or places where the defendant claims to have been at the time of the alleged offense" and to provide the names and contact information for any witnesses the defendant intends to call to establish that alibi. Fed. R. Crim. P.

12.1(a)(1)-(2). Upon such notice, the Government is entitled to reciprocal disclosure of rebuttal witnesses. Id. at 12.1(b). The Government requested disclosure on November 28, 2025, and seeks an order that the Defendant provide the required disclosures as soon as is practicable to provide the Government meaningful time to examine the disclosures, and no later than December 4, 2025, when the pretrial conference is scheduled.

### III.    CONCLUSION

For the reasons explained above, the Government respectfully requests an *in limine* ruling from the Court that evidence contained in Exhibits 1-13 of this motion should be excluded, and that the Court order the disclosure of information related to an anticipated alibi defense as required by Fed. R. Crim. P. 12.1 in time for meaningful review by the Government before the trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney


_____/s/_____
Darren S. Gardner
Joshua A. Rosenthal
Assistant U.S. Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 28, 2025, a copy of this motion was served on counsel for the Defendant via CM/ECF.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:_____/s/_____
Darren S. Gardner
Assistant United States Attorney

9